HOPKINS *vs.* STUMP, *et al.*

JUNE

APPEAL from a decree of the Court of Chancery, *dismissing* the bill of complaint. The bill filed in 1790 charges, among other things, that the defendants, *Stump*

*Where a bill had been filed in the court of chancery under which testimony was taken and returned, and the bill afterwards dismissed by the complainant, who filed a new bill against the same defendants to obtain the same relief for which the former bill had been filed—on the petition of the defendant, Held by Hanson, chancellor, that the testimony so taken in the former suit be received and read in evidence in the new suit.*

*The court of chancery will not enforce a speculating contract for continental money. Per Hanson, Chan.*

*An answer to a bill in chancery will prevail, unless refuted by the testimony of two witnesses, or of one witness, with equitable circumstances.*

*If interrogatories stated in a bill are not answered, the complainant has a right to except to the answer; and if the interrogatories are proper, the defendant will be compelled to answer plainly, fully and explicitly. If then, any material matter, charged in the bill, has been neither denied nor admitted by the answer, it stands on hearing of the cause for nought. Per Hanson, Chan.*

*If A has purchased land from B, and paid for it without receiving a conveyance, or if B holds in trust for A, in either case A has an interest liable to be taken and sold on a fieri facias, and the purchaser is entitled to the aid of the court of chancery to obtain the legal title. Ib*

*But if A has only contracted and given his bond for the purchase money of a tract of land, and received in return a bond of conveyance—Has A such an equitable interest as is liable to be sold on a fieri facias, so as to place the purchaser in the room of A? Ib*

*Whether or not land is bound by a judgment, so far, as that if A has a judgment against him, and before execution, A bona fide sells his right to B, that C, the plaintiff, may on a fieri facias take and sell it without inquiring or seeking for other property? Quære*

and *Dallam*, being seized in fee of a tract of land situate in *Harford* county, sold a part thereof, (describing it,) to the other defendant, *Patrick*, and gave him a bond for a conveyance thereof to him in fee. That *Patrick*, at the time of purchase, paid a considerable part of the purchase money, and gave his bond for payment of the residue. That when the bond became due, *Patrick* tendered the sum of money therein mentioned to *Dallam*, agreeably to the acts of assembly in such case made, but *Dallam* refused to receive the same. The bill next states, that a judgment was obtained in *Harford* county court against *Patrick*, a *fieri facias* issued thereon, which was laid on part of the land purchased as aforesaid by him; afterwards a *venditioni exponas* issued, and under it the land was sold, and was purchased by one *Pattison* for the complainant, as appeared by the deed of the sheriff executed to the complainant, and accompanying the bill. That under executions, on other judgments against *Patrick*, the residue of the land was sold to the complainant, who received the sheriff's deed. That *Stump* had afterwards received the rents of the land, and after the sales made to the complainant, *Patrick*, with a view of defrauding the complainant, gave up the bond of conveyance to *Stump*. That the complainant had made application to *Stump* for a conveyance of the lands. The bill prays that *Stump* may be compelled to execute to the complainant a deed for the lands. The defendants, *Stump* and *Dallam*, demurred specially to the bill, assigning for cause, that the bill did not contain any matter of equity whereon the court of chancery could ground any decree, or give the complainant any relief or assistance against the defendants.

Hanson, Chancellor, (October term 1800.) The chancellor understands, that by a recent decision of the court of appeals(a), an *equitable interest in lands* may be sold under a *fieri facias*, and that the purchaser stands in the place of the defendant at law. He cannot otherwise than remark, that this decision appears, from transactions in this court and in the land office, agreeable to the opinion of the late Chancellor *Rogers*, as well as of the present chancellor.

(a) *Campbell vs. Morris*, 3 *Harr. & M'Hen.* 535.

But whether or not the complainant, standing in the
place of *Patrick*, is entitled to a decree for vesting in him
a legal title, cannot appear, until the matters stated in his
bill are admitted, or denied, by the answer; and, if denied,
are established by proof. *Decreed*, that the demurrer be
overruled, and that the defendants, *Stump* and *Dallam*,
who put in the demurrer, be granted time until the third
Tuesday of February next to put in their answer to the
bill of the complainant.

The defendants answered, and commissions issued, and
testimony was taken and returned.

At December term 1803, the defendants, by their peti-
tion stated, that the complainant commenced, in the court
of chancery, a suit against them for the same cause, and
to obtain the same relief for which the present suit had
been instituted, and that, in the former cause, it was so
proceeded that answers were filed, and a commission is-
sued to examine witnesses, upon which a great number of
witnesses were examined, and their testimony returned to
the court, and that thereupon the cause was set down for
hearing, and the defendants were ready to show that the
complainant was not entitled to relief; but the complain-
ant dismissed his bill, and thereby prevented a hearing of
the cause. That several important witnesses, whose testi-
mony was returned in the former suit, are dead, and seve-
ral others removed out of this state to distant parts, so that
their testimony could not be had on the commissions is-
sued in the present suit. *Prayer*, that the depositions had
and taken in the former suit, so dismissed, shall be receiv-
ed and read in evidence at the hearing of the present
cause.

HANSON, Chancellor, was of opinion, that the defen-
dants were entitled to have their prayer granted; and it
was accordingly ordered and decreed, that the depositions
in the cause heretofore dismissed, and mentioned in the
said petition, be received as evidence on the hearing of
this cause.

The testimony taken in the former suit was exhibited,
&c. and the cause was argued before the Chancellor, by

*Scott* and *T. Buchanan*, for the Complainant; and by
*Martin*, (Attorney General,) *Hollingsworth*, and *Shaaff*,
for the Defendants.

Hanson, Chancellor, (October term 1804.) On considering the bill, answers, depositions and exhibits, &c. it appears to the chancellor, that he cannot grant the prayer of the bill without a violation of several principles in this court established. In the first place, the contract, of which the complainant claims the benefit, is such a contract as this court has again and again said it will not enforce. It was a speculating contract for continental money, which, if *Patrick* the party, instead of *Hopkins*, were complainant, this court would not enforce; and it is impossible for any rational man to conceive. that an assignee, or any person *claiming in the place of the party*, shall be in a better situation than the party himself. But it appears, the idea of the complainant that *Stump*, in whom alone the legal title now is, was willing to perform the contract, and so stipulated; but that arrangements were made to defeat or defraud the complainant. On this subject the complainant called on the defendants for full explicit answers; but the defendants have, by their answers, explicitly denied the chief important matters charged in the bill.

There is no principle better established than this, that if a defendant be compelled to answer, whatever he says on oath shall prevail, unless refuted by the testimony of two witnesses, or of one witness with equitable circumstances. But the testimony in this case is nothing like such a refutation of the answers of the several defendants, notwithstanding the strong pointed charges made by the complainant.

On the demurrer, the chancellor long since decided in the complainant's favour so far as this—the court of appeals having, as he was informed, decided an equitable interest to be liable to a *fieri facias*, the party who has at a sale on a *fieri facias* purchased fairly an equitable interest, is entitled to the aid of this court to give him the legal title. This is the plain meaning of the chancellor's declaration, which however appears to have been misunderstood.

It would seem likewise that the complainant misunderstood the chancellor in another particular. But no person, acquainted with the *laws*, or *rules* or *practice* of this court, would conceive it the meaning of the chancellor, that whatever matter stated in a bill is not denied, must

1808

Hopkins
vs
Stump

be considered as admitted. No! If interrogatories stated in a bill are not answered, the complainant has a right to except to the answer, and if the interrogatories are proper, the defendant will be compelled to answer *plainly*, *fully* and *explicitly*. If then any material matter, charged in the complainant's bill, has been neither denied nor admitted by the answers, it stands on hearing of the cause for *nought*. This assuredly every lawyer will admit.

And now let it be inquired, what is that equitable interest which the court of appeals has said is liable to be sold on a *fieri facias?* The chancellor does not fully understand it. But he readily conceives, that if A has purchased land from B, and paid for it, without receiving a conveyance, or if B holds in trust for A, in either case A has an interest liable to be taken and sold on a *fieri facias,* and the purchaser is entitled to the aid of this court to obtain the legal title. But if A has only contracted and given his bond for the purchase money, and received, in return, a bond of conveyance, the chancellor questions, whether A has such an equitable interest, as is liable to be sold on a *fieri facias,* so as to place the purchaser in the room of A. If such be the meaning of the court of appeals, they, in effect, say, that a cause of action or law suit is liable to a *fieri facias.* In short, the chancellor is inclined to think, that the meaning of the court of appeals was, that if A has a *complete* equitable title to land, of which the naked legal title is in B, the land is liable to a *fieri facias* on a judgment against A.

The chancellor cannot conceive, that contracts for land, which may be deemed to confer an equitable interest, are so far bound by a judgment, as that, after the judgment, and before a *fieri facias*, the parties cannot come to a settlement—For instance, A gives his bond to B for $10,000, the price of *Black Acre*, containing 500 acres. B gives in return, his bond to A, in the penalty of $20,000, conditioned for conveying the said land. These bonds are both dated the 1st of January 1800. At May term 1802, C obtains a judgment against A, for $10,000. In November of the same year, A and B agree to vacate the contract, and *afterwards* C takes out a *fieri facias*, is it reasonable to suppose the law to be, that A had an equitable interest, which being bound by the judgment of C, could not be given up; and that although A may have per-

sonal property, or land, sufficient to satisfy the judgment, C may insist on laying the execution on the *contract?* for laying it on the land is laying it on the contract. No! The impropriety of the idea is glaring. Another doubt— Supposing equitable interests *in,* or mere contracts *for* land liable to a *fieri facias,* at what *time* are these interests or contracts bound? Are they absolutely bound by the *date* of the judgments? Or are they to be bound in the same manner as personal property is bound, viz. from the time only of delivering the writ to the sheriff? The chancellor has always considered it a most important question, *never decided,* (that he knows of,) whether or not land is bound by a judgment, so far, as that if A has a judgment against him, and before execution A *bona fide* sells his right to B, C the plaintiff may, on *fieri facias,* take and sell it, without inquiring or seeking for other property. The chancellor is not apprized of any decision to this effect, if any such has been. But if such decision has taken place, although he certainly would govern himself accordingly, he could not do otherwise than question its propriety.

In *England,* whose laws we follow, lands were, long since, bound by judgment; that is to say, if A, against whom a judgment is obtained, has land, and, after the judgment, conveys it, the plaintiff may, notwithstanding, affect it by the writ of *Elegit.*

During our connexion with *England,* its parliament passed an act, subjecting lands in *America* to be sold under a *fieri facias,* in the same manner as personal property, to satisfy judgments, obtained by subjects of *Great Britain.* The act did not say a word respecting lands to be bound from the time of the judgment; but it seems, that *most* or many gentlemen of the bar entertain an idea, that although *personal property* is only bound *by the delivery* of the writ, and *lands* are liable as personal property, the lands are bound from the time of the judgment, to be taken by *fieri facias* at any time afterwards. Supposing the law to be so, and supposing contracts, as aforesaid, liable to *fieri facias;* that is to say, that the purchaser under a *fieri facias* is to be placed in the situation of the defendant at law, the nature of *Patrick's* contract is such, that, as the chancellor has already intimated, ought not to be enforced, even if *Patrick* were the complainant, instead of *Hopkins.*

The counsel for the defendants has indeed alleged, that the chancellor's decision on the demurrer is grounded on a mistake, and that the court of appeals never has decided an equitable interest to be liable to a *fieri facias.* If the counsel be right, there is an end of the case at once. But the chancellor cannot think that the counsel is right, but laments *that tribunals, whose decisions are to govern other tribunals, do not give their opinions at large on every important point.*

The chancellor, as is his uniform practice, on every important point, has given his opinion pretty much at large. He might still perhaps be more explicit as well as full, but he conceives that he has said enough. *Decreed,* that the bill be dismissed. From this decree the complainant appealed to this court; and on the cause coming on to be argued, and the counsel for the parties declining to argue the case.

DECREE AFFIRMED, NISI.