HENRY F. ZOLLICKOFFER, Executor of JOHN COATES *vs.* ALEXANDER H. SETH, surviving Administrator, c. t. a. of ROBERT L. SETH, and others.

*Liability of the Legatees or distributees of a Surety on an Administration bond, to Contribute in proportion to the Amounts respectively received by them, to the Payment of Judgments which had been recovered against the Executor of the Co-surety of their testator, and which as such Executor he had paid—Sections 109 and 119 of Article 93 of the Code.*

Robert L. Seth died in November, 1865, leaving a will, by which he appointed Alexander H. Seth, his executor; Seth announced his right as executor, and letters of administration with the will annexed, were committed to him and John M. Frazier, who qualified as administrators, c. t. a. and gave bond for the faithful performance of their trust, with McHenry Grafton and John Coates as sureties. Grafton died in April, 1867, leaving considerable estate, and by his will disposed of this property to his mother, and brothers and sisters, and appointed John M. Frazier and Thomas L. Hall his executors. Coates died in September, 1871, leaving a will wherein Henry F. Zollickoffer was made executor. In February, 1870, John M. Frazier died insolvent, and before the estate of Robert L. Seth was fully administered. In October, 1870, Hall, the surviving executor of Grafton, settled in the Orphans' Court, his second and final account, showing that the personal estate of the testator had been fully administered, and thereupon passed over the property to the parties entitled to receive it under the will of the deceased. In October, 1873, A. H. Seth, as surviving administrator of Robert Seth, passed an account in the Orphans' Court, showing balances due to the residuary legatees under the will of his testator, and very soon thereafter suits were instituted on the administration bond, at the instance and for the use of some of such legatees, against the executor of Coates, and also against A. H. Seth the surviving administrator, and against the executrix of Frazier, and also against Hall, the surviving executor of Grafton In these suits recoveries were had as against the executor of Coates; but, as against Seth, the judgments were unavailing, because of his insolvent condition, and as against

Frazier's executrix there were no assets to be bound by judgment, and Hall, as the surviving executor of Grafton, successfully resisted recovery against him, on the ground that he had fully administered the estate of his testator before he was notified of the claims. Consequently the executor of Coates was required and did pay, in 1874, not only the legacies for which judgments were recovered, but other legacies for which the bond was bound. On a bill which he thereupon filed, praying that the legatees or distributees of the estate of Grafton might contribute their respective proportions to re-imburse him as such executor, to the extent of one-half of the amount which he had been required to pay to the legatees under the will of Robert L. Seth, it was HELD:

1st. That while the executor of Grafton might be exonerated, there had been no discharge from, or extinguishment of, the obligation of the bond, as to Grafton's estate, by reason of the act that the estate was administered and distributed before the claim of the complainant was presented.

2nd. That the complainant was entitled to contribution as against the legatees or distributees of the estate of Grafton in respect to the distributions made to them under the will of their testator.

3rd. That each legatee or distributee was liable to make contribution in due proportion to the amount received by him.

Under sections 109 and 119 of Article 93 of the Code, providing for the exoneration of an executor or administrator upon his observing certain precautions, it is the executor or administrator personally that is to be exonerated and discharged, upon final administration of the assets, and not the estate of the decedent or those to whom it has been distributed.

This case distinguished from the cases of *Waters vs. Riley*, 2 *H. & G.*, 305, and *United States vs. Price*, 9 *Howard*, 83.


APPEAL from the Circuit Court of Baltimore City.

The bill of complaint filed in this case on the 28th of July, 1874, by Henry F. Zollickoffer, executor of John Coates, deceased, alleged that a certain Robert L. Seth, of Baltimore City, departed this life some time in the month of November, 1866, leaving a will, wherein, among other things, after making certain bequests, he gave all the rest and residue of his estate unto the children of his sister, Caroline Blades, and the children of his brother, Alexander H. Seth; that the testator appointed the said Alexan-

der H. Seth as the sole executor of his will; that said will was admitted to probate, and letters of administration thereon, with the will annexed were by the Orphans' Court of Baltimore City, committed to the said Alexander H. Seth and John M. Frazier, the former having renounced his right as sole executor; that the said Alexander H. Seth and John M. Frazier qualified as administrators *c. t. a.*, as aforesaid, and gave bond, as required by law, for the faithful performance of said trust, in the penalty of thirty thousand dollars, with a certain F. D. McHenry Grafton, otherwise known as McHenry Grafton, and the said John Coates, the complainant's testator, as sureties; that before said estate was duly administered, on or about the 27th of February, 1870, the said John M. Frazier died; that subsequently, on or about the 9th of May, 1873, the estate of the said Robert L. Seth being still unsettled, and large amounts of money being due to the said residuary legatees under said will, an order was passed by said Orphans' Court, directing the said Alexander H. Seth, surviving administrator of the said Robert, deceased, to charge himself, as such surviving administrator, with certain amounts of money as interest due said residuary legatees, as declared by said order; that on or about the 1st of October, 1873, the said Alexander, surviving administrator as aforesaid, passed in said Orphans' Court his final administration account wherein he charged himself with said several amounts of interest, as required by said order, and showing certain balances of principal and interest due said residuary legatees, after charging them with the sums received from the estate of the aforesaid John M. Frazier, and paid to them. The bill of complaint further charged that on or about the 25th of March, 1867, the said McHenry Grafton died, leaving a will, wherein he appointed the aforesaid John M. Frazier and Thomas L. Hall his executors; that said will was admitted to probate by the Orphans' Court of Baltimore City; that

the said Frazier and Hall qualified as executors, and took upon themselves the administration of said estate ; that by said will, the said Grafton gave one-half of his estate to his brothers and sisters by name, with certain trusts as to two of them, and the other half to his executors in trust for his mother, Keziah Grafton, for life, and after her death to be divided like the first half, among the same brothers and sisters equally ; that on or about the 10th of October, 1870, Hall, the surviving executor, passed a second and final account, showing Grafton's estate to be fully administered.

The bill further charged that John M. Frazier died insolvent, and that the said Alexander H. Seth, as surviving administrator as aforesaid, received from the estate of said Frazier only a portion of the amount actually due said Seth's estate from the said Frazier at the time of his death ; and that said sum of money so received by the said Alexander H. Seth, surviving administrator as aforesaid, from the estate of said Frazier, was duly paid by him to the parties entitled thereto, in their respective proportions, and credit was obtained therefor by him in his said account. It was further charged by the bill that on or about the 24th of September, 1871, the said John Coates departed this life, leaving a will, and by a codicil thereto, appointed the complainant his executor, to whom letters testamentary were issued by the Orphans' Court of Baltimore City ; and further, that the said Alexander H. Seth, surviving administrator, c. t. a. of Robert L. Seth, deceased, was at the time of the death of the said John M. Frazier, and had ever since continued to be insolvent, so that no part of the moneys due the said residuary legatees of Robert L. Seth, under said will, could ever have been, or could at the time of filing the bill, be made by any process against him ; that by reason of such insolvency of the said Alexander H. Seth, and of the insolvency of the estate of the said Frazier, the said residuary legatees of the said Robert L. Seth, deceased, had no other recourse for the recovery of the

amounts due them respectively, than by proceeding upon the administration bond of the said Alexander H. Seth and John M. Frazier. And accordingly, and in pursuance of an order of the Orphans' Court of Baltimore City, passed on the 6th of December, 1873, two suits were, in the said month of December, 1873, instituted in the Superior Court of Baltimore City against the said Alexander H. Seth as surviving administrator *c. t. a.* of Robert L. Seth, deceased, Martha L. Frazier, executrix of John M. Frazier, deceased; the aforesaid Thomas L. Hall, as surviving executor of the said McHenry Grafton, deceased, and the complainant as executor of John Coates, deceased, upon said administration bond, one of said suits being in the name of the State of Maryland, to the use of James L. Perrigo, guardian of William A. Blades, and others, to recover the sums of money due them, as shown by the said administration account of Robert L. Seth's estate; and the other in the name of the State of Maryland, to the use of Ella T. Blades, to recover the sum due her as shown by said account, in which two suits the plaintiff respectively recovered judgments against said defendants; and further, that by reason of the insolvency of the said Alexander H. Seth, and of the estate of the said John M. Frazier, and of the fact that the personal estate of the said McHenry Grafton, who was the co-surety on said administration bond with the complainant's testator, had been fully administered, the complainant was compelled to pay the amounts of said judgments with interest and costs, besides his own costs and expenses, incurred in defending said causes; that said judgments were paid on the 14th of February, 1874, and having been paid, they were, by order of the attorney for the plaintiff, entered to the use of the complainant; and further, that since the recovery of said judgments he had paid the claims of the others of said legatees of Robert L. Seth, so that he had been compelled to pay out of the funds of his testator's estate, by reason of his testator having united with the said

McHenry Grafton as surety in the aforesaid administration bond, altogether the sum of $4,765.28, including costs, besides large amounts for counsel fees.

The prayer of the bill was that the heirs and legatees of the said McHenry Grafton, might be required to contribute their respective proportions so as to re-imburse the complainant to the extent of one-half of the whole amount so paid by him as aforesaid, together with interest thereon and costs. There was a demurrer to the bill. The Court (PINKNEY, J.,) on the 3rd of July, 1875, passed a decree sustaining the demurrer and dismissing the bill.

From this decree the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, ALVEY and ROBINSON, J.

*Robert Riddell Brown* and *Frederick J. Brown,* for the appellant.

The claim of a surety who has paid the debt, to have contribution against his co-surety, continues in full force against the representatives of such co-surety after his death. "The representative of a deceased solvent surety is chargeable *pari passu* with the surviving sureties in contributing to the payment of the common debt." *DeColyar on Guaranties, &c.,* 344; *Mitchell vs. Williamson,* 6 *Md.,* 210; *Primrose vs. Bromley,* 1 *Atkyns,* 89; *Simpson vs. Vaughan,* 2 *Atkyns,* 31; *Batard vs. Hawes,* 2 *E. & B.,* 287; *Prior vs. Hembrow,* 8 *M. & W.,* 873; *Parsons on Contracts,* 32, *note (e;) Williams on Executors,* (5*th Am. Ed.,*) 1607, *Pt. IV, Bk. II, Ch. II, sec.* 1.

Such claim against the representatives continues equally in force against the distributees; at all events under the circumstances of this case, the claim against Frazier and Hall, executors, or the survivor of them, holds equally against Frazier and Hall, or the survivor of them, *trustees* under Grafton's will, to whom certain specific property

was passed over by the administration account, (and of course holds equally against such property when held by Bevan and Kurtz, trustees, under a decree of the Circuit Court, or against the proceeds thereof after sale.) *McKenna vs. McWitherspoon,* 2 *Rich. Eq.,* 20 ; *March vs. Russell,* 3 *My. & Cr.,* 31.

The Act of 1798, (sec. 109 of Art. 93 of the Code,) certainly says nothing about an exoneration of *legatees,* and the trustee stands in their position. *Legatees with assets are chargeable in equity.* Chancery will decree a legatee to refund who has been overpaid through inadvertence. *Hutchins vs. Hope,* 12 *G. & J.,* 244.

Legacies are paid conditionally, and have repeatedly been followed, as in case of a breach of the condition of a bond of a testator after payment of legacy, and a Court of Chancery will decree a legatee to refund. *Williams on Executors,* (5*th Am. Ed.,*) 1214-1221, 1308, *Pt. III, Bk. III, Ch. IV, Secs.* 1 *and* 10 ; *Eeles vs. Lambert, Style* 37, 54 ; *Hawkins vs. Day, Ambler,* 160 ; *Simmons vs. Bolland,* 3 *Meriv.,* 554 ; *Brooking vs. Jennings,* 1 *Mod.,* 174, (per ATKINS, J.;) *Knatchbull vs. Fearnhead,* 3 *My. & Cr.,* 126 ; *March vs. Russell,* 3 *My. & Cr.,* 31 ; *McKenna vs. McWitherspoon, Guardian,* 2 *Rich. Eq. Rep.,* 20.

In the case of the death of a surety on a bond, every distributee of the deceased takes his share of the estate *cum onere;* takes it subject to a liability to contribute proportionally, and to the extent of assets received, in case there should be a default, and a co-surety should call for contribution—*a fortiori* such contribution may be enforced in just such a case as this, and where there is a specific piece of property in existence, which can be identified, the equitable lien still attaches to it. Here a chattel real is in the hands of trustees for sale, and it is sold under an order of Court, pending and subject to this claim for contribution, and the distributees of the proceeds of such sale, are just the same parties who shared among them the bal-

ance of the testator's estate, and are to receive these proceeds in the same rights, in just the same proportions, and in fact equally as among themselves. Consequently the contribution, though enforced thus late in the day, falls equally upon all the distributees of the first half of Grafton's estate as well as upon the distributees of the second half, precisely as if the contribution had been enforced immediately after his death, and before any of the estate had been distributed.

*Wm. Shepard Bryan*, for the appellees.

The universal rule is that when the remedy at law against a surety is gone, equity will not revive it in the absence of fraud, accident or mistake. *Waters vs. Riley*, 2 *H. & G.*, 305 ; *United States vs. Price*, 9 *How.*, 92.

In this case, it is admitted in the bill, that there is no remedy at law against the executor of the co-surety because his estate has been fully administered.

A surety who pays a debt can acquire no rights against his co-surety, except such as the creditor had. Therefore, where the creditor's rights are extinguished, the surety making the payment can acquire none. And this would be the case, even if the creditor's rights had been barred by the baldest technicality. *Waters vs. Riley*, 2 *H. & G.*, 305 ; *U. States vs. Price*, 9 *How.*, 92.

When *Waters vs. Riley* was decided, there was no remedy at law against the executor of a joint obligor who died, leaving a co-obligor surviving him. But the principle on which the case was decided is still applicable. A similar remark may be made of *U. S. vs. Price*.

If authorities are found in other States apparently maintaining the remedy sought in this case ; it is immaterial to discuss their merits or their bearing. We have a testamentary law peculiar to ourselves. According to it a creditor is barred of his claim against the personal assets, by failing to present it before the estate is fully adminis-

tered—(Art. 93 of Code, secs. 102, 109, 117.) The law is different in England and in some of the States. In England it is the duty of the executor to seek the creditor, and he must find him at his peril. In Maryland it is precisely the reverse—the creditor must seek the executor, and "*may be excluded from all benefit of the estate,*" (Art. 93, sec. 110,) unless he does so at the proper time. The creditor has no lien on the personal assets of the deceased, but his claim is personal against the executor, (*Salmon vs. Clagett,* 3 *Bland,* 125,) and if the executor misapplies the assets, the creditor's remedy is on his official bond. *Hill vs. Gomme,* 1 *Beavan,* 540 ; *Allender vs. Riston,* 2 *G. & J.,* 97 ; *Wyse vs. Smith,* 4 *G. & J.,* 295.

But in the present case, the complainant was never at any time a creditor either of the testator or of his executor. Grafton died in 1867 ; his estate was fully administered in 1870, and the complainant's supposed claim arose in 1874 ; and the peculiarity of this case is that it seeks to recover from legatees something which was never due either by their testator or his estate ; in other words, it is an attempt to impose on them a derivative liability which never had an origin from which it could be derived.

ALVEY, J., delivered the opinion of the Court.

The questions in this case arise upon a demurrer to the complainant's bill, and by the demurrer the facts alleged are admitted to be true. If, therefore, the bill discloses a case to entitle the complainant to relief, the decree appealed from must be reversed, and the cause remanded for further proceedings in the Court below.

The right of the complainant to recover from the defendants, or any of them, will depend upon the decision of the two following propositions :

1. Whether, by reason of the death of McHenry Grafton, and the full administration of his estate by his personal representative, his obligation upon the administra-

tion bond of Alexander H. Seth and John M. Frazier, in which Coates and Grafton were co-sureties, ceased and became extinguished not only as against his personal representative, but also as against his legatees and distributees, who have received his personal estate upon final administration by the executor.

2. The complainant, as executor of Coates, having paid the legacies under Robert Seth's will, after the administration and distribution of the personal estate of McHenry Grafton, Whether he, the complainant, is entitled to relief for contribution as against the legatees or distributees of the estate of Grafton, in respect to the distributions made to them under the will of their testator?

1. The administration bond, upon which Coates and Grafton were co-sureties, was given in 1865. Alexander H. Seth, the surviving administrator, with the will annexed, of Robert Seth, is and has been for a long time past utterly insolvent; and John M. Frazier, the other administrator and principal in the bond, died in 1870, also insolvent, and before the estate of Robert Seth was fully administered. Grafton, the co-surety with Coates, died in April, 1867, leaving considerable estate, and by his will disposed of his property to his mother and brothers and sisters, and appointed John M. Frazier and Thomas L. Hall his executors. Coates died in September, 1871, leaving a will wherein the complainant was made executor.

In October, 1870, Hall the surviving administrator of Grafton, settled in the Orphans' Court his second and final account, showing that the personal estate of the testator had been fully administered, and thereupon passed over the property to the parties entitled to receive it under the will of the deceased.

In October, 1873, Alexander H. Seth, as surviving administrator of Robert Seth, passed an account in the Orphans' Court, showing certain balances due to the residuary legatees under the will of his testator; and

very soon thereafter suits were instituted on the administration bond, at the instance and for the use of some of such legatees, against the complainant as executor of Coates, and also against Alexander H. Seth, the surviving administrator, and against the executrix of Frazier, and also against Hall, the surviving executor of Grafton. In these suits recoveries were had as against the complainant ; but, as against Seth, the judgments were unavailing, because of his insolvent condition, and as against Frazier's executrix there were no assets to be bound by judgment, and Hall, as the surviving executor of Grafton, successfully resisted recovery against him, on the ground that he had fully administered the estate of his testator before he was notified of the claims. Consequently, the complainant, as executor of Coates, was required and did pay, in 1874, not only the legacies for which judgments were recovered, but other legacies for which the bond was bound, amounting in the whole to the sum of $4765.

Upon the facts, as detailed in the bill, the complainant prays that the legatees or distributees of the estate of Grafton may contribute their respective proportions to reimburse him, as the executor of Coates, to the extent of one-half of the amount which he has been required to pay to the legatees under the will of Robert Seth.

This application is resisted upon the ground that the estate of Grafton is entirely and completely exonerated from any and all obligation created by the bond, by reason of the death of Grafton and the full administration of his estate before the existence of the claims was notified to his executor, and that, consequently, there is no right of contribution that can be maintained by the complainant as against the legatees or distributees of the co-surety's estate.

That the executor of Grafton was exonerated, if he fully administered the estate and paid it over to the legatees or

distributees without due notice of the claims, and after giving the notice by advertisement as required by the statute, may readily be conceded.   The Code, Article 93, sec. 109, provides that, "In case all the assets have been paid away, delivered or distributed as herein directed, and a claim shall afterwards be exhibited, of which the administrator hath not notice by the exhibition of the claim legally authenticated, as herein required, *he shall not be answerable for the same* ; and if he be sued for any claim, and shall make it appear to the Court in which suit is brought that he hath so paid away, delivered or distributed, and the plaintiff cannot prove that the defendant had notice as aforesaid before such payment, delivery or distribution, the Court shall not proceed to give judgment (although the amount of the claim against the deceased may be ascertained,) until the plaintiff shall be able to show further assets coming into the defendant's hands," &c.   And again, by section 119 of the same Article of the Code, it is provided, that "Whenever it shall appear by the first or other account of an executor or administrator, that all the claims against or debts of the decedent, which have been known by or notified to him, have been discharged or allowed for in his account, it shall be *his duty* to deliver up and distribute the surplus or residue as directed ; provided, that his power and duty with respect to future assets shall not cease ; and after such delivery he shall not be liable for any debt afterwards notified to him ; provided, he shall have advertised as hereinbefore directed," &c.   The succeeding section of the same Article of the Code, prescribes the form of the notice to be given to the creditors of the deceased.

The law is very explicit, as it appears from the sections of the Code recited, in providing for the exoneration of the executor, upon his observing certain precautions ; but it is to be noticed and borne in mind that it is the executor or administrator personally that is to be ex-

onerated and discharged, and not the estate of the dece-
dent. It is no where declared or intimated that there
should be no remedy for a creditor who may have failed
to authenticate and notify his claim to the executor, before
final administration ; or that, if the creditor's claim be not
ascertained or provable before such final settlement and
distribution, he should be without remedy, notwithstand-
ing his debtor's assets may be shewn to be abundant, simply
because the executor or administrator may have delivered
them over to legatees or distributees. It would be strange,
indeed, if such were the provisions of the law. · What
would be the predicament of an absent creditor, who
might be totally ignorant of either the death of his debtor,
or of the administration of his estate ? What would be-
come of parties dependent for their protection and security
upon official bonds, guardian bonds, trustees' bonds, and
the like, where the breach has not occurred, or, if occurred
has not been ascertained at the time of the final settle-
ment and distribution of a surety's estate, if the position
of the defendants in this case be sustained ? Surely the
law never contemplated the total discharge of the deceased
surety's obligation in all such cases. In this case, the
amounts for which the bond was ultimately liable, were
not ascertained until October, 1873—about three years
after the final settlement and distribution of Grafton's
estate. Until these amounts were ascertained, and actually
paid by the complainant, as the representative of the
co-surety Coates, there was no claim provable by him
against the estate of Grafton. No *laches* therefore can be
imputed to him in not exhibiting the claim for contribu-
tion before distribution of Grafton's estate by his exe-
cutor.

In England, as is well known, prior to Lord St. Leon-
ard's Act, 22 *and* 23 *Vict.*, *ch.* 35, it was the established
practice for administrators and executors to administer
their estates under the orders and decrees of the Court of

Chancery, and one great object in resorting to that juris-
diction by the executor or administrator was to obtain in-
demnity and protection against all future liabilities after
final settlement.   The creditors were required to come in
and prove their claims under the decree, just as they are
required to come in and prove their claims under the
notice given by the executor or administrator by the order
of the Orphans' Court, in our practice.   Those failing to
come in and prove their claims before final settlement and
distribution of the estate, lost their remedy against the
executor or administrator, but not as against the legatees
or distributees.   The same exoneration of the executor or
administrator afforded in England by the decree in
chancery, is provided for with us by statute.

In the case of *Waller vs. Barrett*, 24 *Beav.*, 413, an
administration suit, Lord ROMILLY, the Master of the
Rolls, in speaking of the effect of the omission of the
creditor to come in and prove his claim under the decree,
said : "In the first place, I hold this to be established by
the authorities, that if breaches of covenant have been
committed at the date of the decree, and the covenantee
do not come in and prove under the decree, he will be
barred of all remedy against the executors, and that the
executors will be perfectly safe.   It is the case of an exist-
ing debt, which the creditor does not come in and prove
under the decree, and the Court having administered the
assets protects the executors against all future claims.
The creditor, however, is not left without his remedy,
but that remedy is not against the executor.   That prin-
ciple is so fully established in this Court, that it is unne-
cessary to cite many authorities on the subject; but this
is what Lord ELDON says in *Gillespie vs. Alexander*, (3
*Russ.*, 136,) on the subject.   'If a creditor does not
come in till after the executor has paid away the residue,
he is not without remedy, though he is barred the benefit
of that decree.   If he has a mind to sue the legatees to

bring back the fund he may do so; but he cannot affect
the legatees except by suit, and he cannot affect the exe-
cutor at all.'" The authorities are exceedingly numerous
upon this subject, all maintaining the same general doc-
trine, several of which are referred to by the Master of the
Rolls, in *Waller vs. Barrett*, and, among others, he refers
to the case of *Knatchbull vs. Fearnhead*, 3 *Myl. & Cr.*,
122, in which Lord Cottenham said: "Where an executor
passes his accounts in this Court, he is discharged from
further liability, and the creditor is left to his remedy
against the legatees; but if he pays away the residue with-
out passing his accounts in this Court, he does it at his
own risk." And to refer again to the case of *Waller vs.
Barrett*, the Master of the Rolls, in another part of his
opinion, made these observations: "I am at a loss to con-
ceive on what principle a debt which may arise *hereafter*,
but which is not now existing, is to be treated on a foot-
ing different to an existing debt. The creditor, although
advertised for, may be abroad at the time; he may be
ignorant of the whole proceedings, and yet if he do not
come in and claim, his only remedy in this Court is against
the legatees." And in the case of *March vs. Russell*, 3
*Myl. & Cr.*, 31, referred to in argument, Lord Chancellor
Cottenham treated the doctrine as one of the oldest and
best established of the Court. He there said: "That a
creditor may follow assets in the hands of the legatees to
whom they have been delivered in ignorance of the credi-
tor's demand, has been an established principle of this
Court from the earliest period, of the decisions in which
we have any traces." And in accordance with these, and
many other authorities maintaining the same general
principle, Mr. Justice Story has stated the doctrine as one
as firmly established as any in the equity jurisprudence
of the country. In the 2 *vol. Eq. Juris.*, sec. 1251, the
learned author says: "But the legatees and distributees,
although there was an original deficiency of assets, are

not at law suable by the creditor. Yet he has *a clear right in equity*, in such a case, to follow the assets of the testator into their hands, as a trust fund for the payment of his debt. The legatees and distributees are in equity treated as trustees for this purpose; for they are not entitled to anything, except the surplus of the assets after all the debts are paid.'' This just and equitable doctrine formed a part of the system of jurisprudence implanted here from the mother country, and there is nothing in our testamentary system that at all militates against its continued operation. Indeed, it has been fully recognized by this Court in the case of *Kent vs. Somervell*, 7 *Gill & John.*, 265, 270, and has been applied and acted on in the case of *Hanson vs. Worthington*, 12 *Md.*, 418, with respect to a legacy erroneously paid. See, also, *Somervell vs. Somervell*, 3 *Gill*, 276.

Now, in England, by *Stat.* 22 *and* 23 *Vict., ch.* 35, *sec.* 29, very much the same kind of notice by advertisement is required to be given to creditors to produce their claims to the administrator or executor, as that required to be given by our Code. It is provided that at the expiration of the time named in the notice for sending in such claims, the executor or administrator shall be at liberty to distribute the assets of the testator or intestate, or any part thereof, amongst the parties entitled thereto, having regard to the claims of which such executor or administrator has notice; and shall not be liable for the assets, or any part thereof, so distributed, to any person of whose claim such executor or administrator shall not have had notice at the time of distribution. But it is declared that nothing in the Act shall be taken in any manner to prejudice the right of the creditor to follow the assets so distributed into the hands of the persons to whom distribution may be made; the object and design of the Act being to avoid the expense and delay attending administration suits, and to afford to the executor or administrator the same protection that

he would have under a decree in chancery. *Clegg vs. Rowland, L. R.,* 3 *Eq. Cas.,* 368. This same protection was designed by the sections of the Code to which we have referred, and hence, by the terms of the statute, only the executor or administrator is exonerated from liability upon final administration of the assets, and not the estate or those to whom it has been distributed. That such was the design of the statute is made apparent by comparison of section 108, of Art. 93, with the sections of the same Art. to which we have heretofore referred. By the sec. 108, if a claim be exhibited, and it be rejected or disputed by the executor or adminstrator, he is allowed to retain assets to pay it, provided it be established; but those assets are made liable to other claims, or to be delivered up on distribution, in case the claim retained for be not established; "and if on any claims exhibited and disputed as aforesaid, the creditor or claimant shall not, within nine months after such dispute or rejection, commence a suit for recovery, *the creditor shall be forever barred.*" By this provision, not only is the executor exonerated, but he is required to pay out or distribute the money retained, and the creditor is forever barred all right of recovery against the assets of the estate, no matter in whose hands they are found. No such bar or preclusion is provided in terms with reference to any claim that has not been exhibited, or which, in the nature of things, could not have been exhibited, before final administration; and hence it may well be concluded that no such bar or preclusion was ever intended with respect to such claims.

If, however, a party has a probable claim against an estate, and without sufficient cause, neglects to prove and exhibit it to the executor in due time, it may be that, in any subsequent attempt to pursue the assets in the hands of legatees or distributees, he will be successfully met with the defence of *laches.* That is a defence that depends upon the particular facts and circumstances of each case

as disclosed. Here, as we have said, there is no ground for such a defence.

Whether the residuary legatees under Robert Seth's will, had provable claims as against Grafton's estate, before the settlement of the account by the administrator of Seth, in October, 1873, ascertaining the balances due, is a question that we need not decide. It is certain that they were not bound to prove such claims, and their failure in no manner operated to discharge the obligation of the sureties on the bond. They had a right to resort to all or any of the parties bound in the bond; and the fact that they resorted to the complainant and recovered the entire amount of their claims from him, operated no prejudice to the estate of Grafton, the co-surety. This is clear upon authority. *Watkins vs. Worthington*, 2 *Bl.*, 533 *to* 535; *Mitchell vs. Williamson*, 6 *Md.*, 210; *Garey vs. Hignutt*, 32 *Md.*, 532.

We need not say more to justify the conclusion, that, while the executor of Grafton may be exonerated, there has been no discharge from, or extinguishment of, the obligation of the bond, as to Grafton's estate, by reason of the fact that the estate was administered and distributed before the claim of the complainant was presented. Such conclusion is but the natural and irresistible deduction from the principles which we have stated.

The authorities relied on by the defendants, as maintaining a doctrine at variance with that here asserted, are the cases of *Waters vs. Riley*, 2 *H. & J.*, 305, and the *United States vs. Price*, 9 *How.*, 83. But these cases are entirely dissimilar to the one under consideration, as from a short statement of the principles upon which they were decided will appear. The first, that of *Waters vs. Riley*, was the case of *a joint* bond, executed before the Act of 1811, ch. 161, where the sureties had died, and upon a question of the right of contribution between the representatives of the sureties on such bond, it was held, that,

as on a *joint* bond the remedy at law survived against the surviving obligor, and was totally lost as against the representative of him who first died, therefore, chancery would not revive the remedy thus lost, in the absence of fraud, accident or mistake; and, consequently, there was no right of contribution in such case. But there, it is manifest, the whole difficulty grew out of the inherent nature of the contract itself. Each party was supposed to have contracted with reference to such condition in the contract, that the death of one obligor devolved the entire obligation of the bond on the survivors. With this legal obligation thus fixed by the death of the surety first dying, the Court of equity refused to interfere, but left the parties to stand where their contract placed them. And so in the case of *United States vs. Price.* In that case there were joint and several bonds given for duties, and the United States having recovered a *joint* judgment against all the obligors, thus electing to treat the contract as exclusively *joint,* and afterwards the surety dying, it was held that the United States could not be allowed to proceed in equity against the executor of the deceased surety for the purpose of holding the assets of his estate responsible for the judgment. The question there was, whether a Court of equity would interfere to give a remedy against the personal assets of a deceased surety, when the remedy at law had been lost by the election of the obligee to take a *joint* judgment on a joint and several obligation. The reasoning of the Court, from which it was concluded in the negative, was, that the obligation of suretyship arises only from positive contract, and that where a surety enters into a joint and several obligation with his principal, the obligee and all the parties are supposed to be aware of the doctrines of law connected with such securities, and to incorporate them therein, as part of the contract. That the obligee knows the bond will entitle him to either a joint or several judgment, at his election; he knows also

that he cannot have both, that his bond is extinguished by his judgment, or merged in it, as a security of a higher nature, and he knows that if he elects to take a joint judgment, and neglects to have execution levied in the lifetime of the surety, his personal estate will be discharged at law; and being discharged at law, the estate should not be held answerable in equity. Whether this reasoning was sufficient for the case to which it was applied, we 'are not called upon to determine; it is sufficient for us to say that the case is quite distinguishable, both in principle and reason, from the one now under consideration. Here the bond is joint and several, and there has been no joint judgment recovered thereon; and nothing has occurred which, from the nature and inherent qualities of the contract, could operate to discharge the obligation created by the bond. Therefore, neither the case of *Waters vs. Riley*, nor that of the *United States vs. Price*, has any application here whatever, to say nothing of the operation of the Code, Article 49, section 1, to remove the technical grounds of discharge relied on in those cases.

2. As to the question of the complainant's right to contribution as against the legatees who have received the estate of the deceased co-surety, that has been virtually answered affirmatively in what has been said in reference to the first question considered; and we think it clear beyond doubt. If the bond was still liable at the time of payment, the implied obligation, founded in natural justice and equity, was operative to entitle the surety or his personal representative paying the debt to contribution from the estate of a deceased co-surety. The burthen discharged was common to both estates; and the equitable obligation which binds one surety to contribute to another, as often declared, springs up at the time the relation is entered into, and is consummated when the surety has paid the debt. It is perfectly well settled that the right of contribution exists as against the representatives of a deceased

co-surety, for payment after his death, by reason of the implied obligation which arose at the time the common suretyship was entered into. *Bachelder vs. Fiske*, 17 *Mass.*, 464 ; *Bradley vs. Burwell*, 3 *Denio*, 62, 66 ; 1 *Lead. Cas. Eq., p.* 167 ; and here, inasmuch as the estate of the co-surety was administered and distributed before payment was required to be made to the legatees under Seth's will, the legatees or distributees receiving the assets belonging to the estate of the co-surety Grafton are liable to make the same contribution that the executor could have been required to make, if the assets had not been delivered or paid over. There is neither justice nor principle that would entitle them to stand in a more favorable position than the executor, with respect to the claim. They hold the assets of the estate of the deceased as trustees, as to valid, enforcible debts remaining unpaid ; and they have no beneficial interest in such assets until such debts are all discharged. Each legatee or distributee is liable to make contribution in due proportion to the amount received by him. *Gillespie vs. Alexander*, 3 *Russ.*, 130.

It follows that the decree of the Court below must be reversed, and the cause remanded, that further proceedings may be had upon the overruling of the demurrer of the defendants.

*Decree reversed, and*
*cause remanded.*

(Decided 8th March, 1876.)